# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DALE W. DOUTT**, | ) |
| Plaintiff, | ) |
| v. | ) 2:15cv707 |
| | ) **Electronic Filing** |
| **AIM NATIONALEASE**, | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

June 27, 2017

**I.    INTRODUCTION**

Plaintiff, Dale W. Doutt ("Doutt" or "Plaintiff") filed a four (4) count Second Amended Complaint alleging two (2) counts of age discrimination (unlawful termination and retaliation) in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA"), and two (2) counts age discrimination (unlawful termination and retaliation) in violation of the Pennsylvania Human Rights Act, 43 Pa. Cons. Stat. Ann. § 925 *et seq.* (the "PHRA"), against Defendant, AIM Nationalease ("AIM" or "Defendant"). Aim has filed a motion for summary judgment, Doutt has responded and the motion is now before the Court.

**II.    STATEMENT OF THE CASE**

On December 24, 2013, at the age of sixty-two (62), Doutt was hired by AIM as a Service Manager in its Virtual Maintenance Department in Girard, Ohio. AIM Concise Statement of Undisputed Material Facts ("AIM CSUMF") ¶ 1. Doutt previously worked for AIM in 1986 as a night shop supervisor, but left after three (3) months taking a position at Rosedale Technical Institute. AIM CSUMF fn. 1. At the time of his hire in 2013, Doutt received a copy of AIM's policy and procedures handbook and signed an acknowledgement

affirming that he read the handbook and that he agreed to comply with the policies and procedures contained therein. AIM CSUMF ¶ 2.

AIM's Virtual Maintenance Department facilitates preventative maintenance and service for revenue producing vehicles and fleets. To accomplish this goal, Service Managers communicate directly with AIM customers and vendors to address vehicle maintenance issues or to process vehicle service requests. AIM CSUMF ¶ 7. The Virtual Maintenance Department is divided into two separate Facilities or Branches and is referred to as Facility/Branch 99 and 94. AIM CSUMF ¶ 8. Facility/Branch 94 was created in December 2013/January 2014 to provide service to a new AIM customer, Matthews Caskett Company, and Doutt was hired specifically to work as Service Manager in Facility/Branch 94, when it was up and running. *Id.* Doutt, however, was never offered the lead supervisor position for Facility/Branch 94 or any other Facility/Branch. *Id.*

Doutt, as well as all other Service Managers in the Virtual Maintenance Department, reported directly or indirectly to Ken Singleton ("Singleton"). AIM CSUMF ¶ 9. As a Service Manager, Doutt was responsible for: (1) ensuring the effectiveness of all repair work on behalf of customers; (2) reviewing preventative maintenance records to ensure units are being serviced at proper intervals; (3) coordinating the creation and preparation of repair orders for all repair work scheduled; (4) confirming all work performed is properly recorded on repair orders; and (5) ensuring that all work orders clearly indicate the nature of the work performed. AIM CSUMF ¶ 10.

Because Facility/Branch 94 was not up and running when he was hired in December 2013, Doutt was assigned to work as a Service Manager for Facility/Branch 99. AIM CSUMF ¶ 12. There, Doutt worked under the direct supervision of lead supervising Service Manager Ken Wells ("Wells"), the head or for Facility/Branch 99. *Id.* In January of 2014, Doutt approached

Ken Wells about a January 22, 2014 internal phone list that incorrectly listed his job title as "Maintenance Assistant." AIM CSUMF ¶ 13.

AIM does not employ any individual as a Maintenance Assistant. AIM CSUMF ¶ 17. Though AIM contends that all new Virtual Maintenance Department hires are initially classified as "Maintenance Assistants," Crystal Embry Wallace ("Embry"), who was hired on January 14, 2014, was listed in the January 22, 2014 internal phone list as "Branch 94 Service Manager." *See* AIM CSUMF ¶ 16; Doutt Appendix, Patty Durkin[1] Deposition ("D. App. Durkin Dep.") pp. 16, 36; Durkin Depo. Ex. 1. When Doutt brought the internal phone list to Durkin's attention, the phone list was promptly changed to correct Doutt's job title to Service Manager. AIM CSUMF ¶ 19.

On or about February 14, 2014, Doutt was transferred from Facility/Branch 99 to Facility/Branch 94, the role for which he was originally hired. AIM CSUMF ¶ 25. He served in this capacity until his termination on October 22, 2014. *Id.* To memorialize Doutt's transfer to Facility/Branch 94, AIM issued a Change of Status Form on February 14, 2014, stating: "Mr. Doutt is a [service] manager in the virtual facility department. As such, he is a member of the team and is responsible for all customers, accounts and objectives for this department. Effective this date, his primary focus shifted from facility 99 to facility 94 but is not limited to facility 94 activity. In addition to the change in primary focus, his direct supervisor has shifted from Ken Wells (99, 96, 95) to Chris Embry[2] (94)." AIM CSUMF ¶ 27. As Service Managers functioning as head/lead supervisors of a Facility/Branch, Embry and Wells attended supervisor meetings,

---

[1] Patty Durkin ("Durkin") was AIM's Vice President of Human Resources.

[2] Embry was hired on January 14, 2014, to become the head/lead supervising Service Manager for Facility/Branch 94. AIM CSUMF ¶ 26.

3

interacted with customers and had the authority to authorize higher levels of repairs. AIM CSUMF ¶ 28.

AIM contends that a disciplinary meeting involving Embry, Singleton and Doutt, with regard to Doutt's performance, was held on April 7, 2014. AIM CSUMF ¶ 29. Doutt admits that he asked Embry, "[h]as anyone ever taken a job that was promised to you?" AIM CSUMF ¶ 31. Doutt also told Ken Singleton that he did not trust him. *Id.* Doutt was very defensive in the meeting, and the meeting was terminated due to Doutt's disruptive behavior. *Id.* Embry prepared a summary of the meeting, as well as "Notes to File" and an "Action Plan" for Doutt to incorporate into his performance. AIM CSUMF ¶¶ 30, 31 & 32. Doutt contends that he was never presented with the Action Plan. Doutt Response to Concise Statement of Undisputed Material Facts ("Doutt Response") ¶ 32.

On that same day, Doutt sent a correspondence to AIM's Vice President of Human Resources, Patty Durkin ("Durkin"), in which he stated:

> I feel I have been subjected to discrimination and humiliation and request that I be given an opportunity to transfer to another department where my education, technical training and hands on experience will be better appreciated and utilized.

Doutt Deposition Ex. N. Doutt also complained that he had been hired as a Service Manager, but he was identified as a Maintenance Assistant, and that he had been unfairly criticized by Embry and Singleton. *Id.* Durkin met with Doutt on April 8, 2014, to discuss his complaint. AIM CSUMF ¶ 35. Doutt reiterated the complaints in his letter and informed Durkin that he was "hurt" that he was not given the head/lead supervisor job for Facility/Branch 94 because he believed he was more qualified than Embry. AIM CSUMF ¶ 37. Durkin investigated Doutt's claims, however, she was unable to substantiate any evidence of discrimination. AIM CSUMF ¶ 39.

4

On April 18, 2014, Doutt requested a transfer to a non-Service Manager role in the Virtual Maintenance Department. AIM CSUMF ¶ 42. The request was denied because Doutt continued to have performance issues. *Id.*; Doutt Deposition Ex. P.

On April 30, 2014, Doutt filed charge with the United States Equal Opportunity Commission ("EEOC") alleging, *inter alia*, that AIM hired "a younger less qualified female…to replace me at some point. Employer provides me with alleged performance issues. There were no deficiencies." AIM CSUMF ¶ 44. Doutt also stated that he "will not resign to make room for the promotion of this new hire." *Id.* In the EEOC Charge, Doutt identified Embry as the only comparator. AIM CSUMF ¶ 46.

On August 28, 2014, Doutt received two written warnings for unsatisfactory work performance. AIM CSUMF ¶ 52; Doutt Depo. Ex. L. The first warning involved Doutt's failure to provide accurate and complete customer information on a work order, while the second warning was with regard to Doutt's failure to follow up with a customer on a scheduled repair. *Id.* Doutt admits that he had been previously counseled on both issues. Doutt Response ¶ 52. Doutt left work shortly after receiving the written warnings and went to his treating physician complaining of chest pains. AIM CSUMF ¶ 53; Doutt Response ¶ 53. He was admitted to the hospital and discharged on August 30, 2014. Doutt Response ¶ 53.

On September 2, 2014, Doutt submitted paperwork to AIM requesting short term disability benefits and medical leave under the Family and Medical Leave Act ("FMLA"). AIM CSUMF ¶ 55. Dr. Alfred Joseph ("Dr. Joseph") certified on the documentation that Doutt was unable to perform "all job functions" from August 18, 2014 until October 6, 2014. *Id.* On September 26, 2014, AIM notified Doutt that he was ineligible for leave under the FMLA because he had not been employed by AIM for at least 12 months. AIM CSUMF ¶ 56. Doutt,

5

however, was granted job protected leave for the period of his incapacitation as described on his paperwork. *Id.*

On September 26, 2014, Doutt faxed AIM a reasonable accommodation request form indicating that his next appointment with Dr. Joseph was not until October 13, 2014, and further affirming that he was unable to perform "all job functions" until that time. AIM CSUMF ¶ 57. On October 1, 2014, AIM confirmed that it would extend Doutt's job protected leave until his appointment with Dr. Joseph on October 13, 2014. AIM CSUMF ¶ 58. On October 13, 2014, a work status form was submitted to AIM in which Dr. Joseph indicated that Doutt needed an indefinite leave of absence and that he could not physically or mentally perform any of the essential functions of his position. AIM CSUMF ¶ 59. Based on Dr. Joseph's certification and State and Federal laws governing an employee's need for an indefinite medical leave of absence, Doutt was administratively terminated on October 22, 2014. AIM CSUMF ¶ 60.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts

must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV. DISCUSSION**

Doutt contends that his employment with AIM was wrongfully terminated because of his age[3] and in retaliation for filing a Charge with the EEOC. Under the ADEA, an employer is prohibited from discharging any individual or otherwise discriminating against an individual

---

[3] There is no need to differentiate between Doutt's Federal discrimination claims and PHRA claims because, for our purposes, the same analysis is used for each. *See, e.g., Simpson v. Kay Jewelers*, 142 F.3d at 643-644 & n.4; *Jones v. School District of Philadelphia*, 198 F.3d 303, 410-411 (3d Cir. 1999); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth*, 609 A.2d 804, 805 (Pa. 1992).

7

with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). A plaintiff can sustain a claim of discrimination under the ADEA by presenting either direct or circumstantial evidence of discrimination. *See Duffy v. Magic Paper Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). Because Doutt has not provided direct evidence of discrimination, our inquiry is governed by the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803, (1973) (the "McDonnell Douglas analysis"). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the use of the McDonnell Douglas analysis in ADEA cases involving indirect evidence).

Under the McDonnell Douglas analysis, once the employee establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. If the employer makes that showing, the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pretextual. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981). Throughout this burden-shifting exercise, the burden of persuasion remains on the employee. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995) (citing *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. at 253).

Doutt, therefore, bears the initial burden of establishing a *prima facie* case of discrimination. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006); *Atkinson v. LaFayette College*, 460 F.3d 447, 454 (3d Cir. 2006). To establish a *prima facie* case, Doutt must demonstrate that: (1) he is a member of the protected class, *i.e.* at least 40 years of age; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) that he was ultimately replaced by another employee who

was sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d at 689 (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004). To establish a *prima facie* case at summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001).

AIM argues that Doutt is unable to establish a *prima facie* case of age discrimination because he is unable to show that he was qualified for his position as a Service Manager and that he was replaced by a younger employee. Under the ADEA, "in order to establish a *prima facie* case under the ADEA, a plaintiff must show, among other things, that he was 'qualified' for the position he held prior to his termination. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc). To be 'qualified' a plaintiff must have been 'performing his job at a level that met his employer's legitimate expectations' at the time of his discharge." *Detz v. Greiner Industries, Inc.*, 346 F.3d 109, 119 (3d Cir. 2003). *See also Walter v. United Tel. Co.*, 2006 U.S. Dist. LEXIS 80923, 32-33 (W.D. Pa. Nov. 6, 2006).

Here, Doutt's physician, Dr. Joseph, submitted a work status form to AIM on October 13, 2014, in which he indicated that Doutt could not physically or mentally perform any of the essential functions of his position, and that Doutt required an indefinite leave of absence. Because Doutt was unable to perform his job at a level that met AIM's legitimate expectations at the time of his termination, he fails to establish that he was objectively qualified for his position.

AIM also argues that Doutt cannot establish the fourth element because he was not replaced, his job duties were, instead, absorbed by Embry and Facility/Branch 94 Clerk Danielle Regula. Because Embry and Regula are substantially younger than he, Doutt argues that he has established the fourth element because the younger employees assumed his job responsibilities. The Court of Appeals for the Third Circuit has indicated the *prima facie* case is not "intended to

9

be rigid, mechanized, or ritualistic." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999). Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.* In this instance, however, Doutt is unable to provide facts that support an inference of discriminatory animus. Therefore, Doutt has not presented a *prima facie* claim for a violation of the ADEA and the McDonnell Douglas analysis ends after the first step.

Assuming, however, that Doutt has set forth *a prima facie* case for age discrimination, the Court finds that AIM has offered a legitimate nondiscriminatory reason for its employment action. Aim's burden, in this regard, is "relatively light" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").

As set forth above, Dr. Joseph submitted a work status form to AIM on October 13, 2014, in which he indicated that Doutt could not physically or mentally perform any of the essential functions of his position, that he could not return to work, with or without a reasonable accommodation, and that Doutt required an indefinite leave of absence. Because Doutt was not qualified for his position at the time of his termination, AIM has articulated a sufficient legitimate, nondiscriminatory business reason for his termination.

The burden shifts back to Doutt to show that AIM's articulated reason for his termination is merely a pretext for age discrimination. An employee may demonstrate that his employer's

legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a factfinder to either (1) disbelieve or discredit the employer's justification; or (2) believe discrimination was more likely than not a "but for" cause of the adverse employment action. *Abels v. Dish Network Serv., LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (citing *Fuentes v. Perskie*, 32 F.3d at 764). *See also Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177-178 (2009). Evidence undermining an employer's proffered legitimate reasons must be sufficient to "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995).

In order to discredit AIM's proffered justification under the first prong of *Fuentes*, Doutt must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in the proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence," and ultimately infer that AIM did not act for the asserted nondiscriminatory reasons. *Fuentes v. Perskie*, 32 F.3d at 765. If Doutt's evidence rebutting AIM's proffered reason permits a factfinder to conclude that such reason (or reasons) was either a "post hoc fabrication" or otherwise did not actually prompt the employment action, then summary judgment is inappropriate. *Fuentes v. Perskie*, 32 F.3d at 764.

Alternatively, Doutt must show that age-based discrimination was a "but-for" cause of AIM's decision to terminate him. To meet this burden, Doutt "cannot simply show that [AIM's] decision was wrong or mistaken." *Fuentes v. Perskie*, 32 F.3d at 765. The question is whether AIM was motivated by a discriminatory animus, not whether it was wise, shrewd, prudent, or competent. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861 (1991). *See also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n

11

employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason.").

Here, Doutt does not refute the validity of Dr. Joseph's certification. In fact, he readily admits that he was unable to perform the essential functions of his position or to return to work for an indefinite period of time in October 2014. Notwithstanding this acknowledgment, Doutt asserted in his EEOC Charge and during his deposition that he "believes" AIM hired Embry in order to replace him, and that once she was hired, his work performance was criticized by Singleton and Embry in order to get rid of him or make him leave.

A plaintiff's mere belief or contention that he was subject to discrimination is not enough to create a dispute of material fact sufficient to survive summary judgment. *Ullrich v. United States Secy. of Veterans Affairs*, 457 Fed. Appx. 132, 136-137 (3d Cir. 2012); *See also Ekhato v. Rite Aid Corp.*, 529 Fed. App'x 152, 156 (3d Cir. 2013) (concluding that the plaintiff's subjective belief about the reason for her termination was insufficient to support a finding of pretext at summary judgment (citations omitted)); *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) (holding that speculation is not sufficient to defeat a motion for summary judgment); *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 Fed. App'x. 209, 215-216 (3d Cir. Pa. Oct. 28, 2011) (concluding that plaintiff's conjectures were insufficient to satisfy her burden of pointing to evidence that supported the existence of pretext at summary judgment and noting that mere speculation does not create genuine issues of material fact); *McKnight v. Aimbridge Emple. Serv. Corp.*, 2016 U.S. Dist. LEXIS 126837 *31 (E.D. Pa. Sept. 16, 2016) (Plaintiff's subjective belief that his supervisor was aware of his complaint about discrimination, without more, is insufficient to satisfy his burden of pointing to evidence that could establish pretext).

Doutt, therefore, fails to make a showing of pretext as he is unable point to evidence in the record which would allow a rationale factfinder to "believe that an invidious discriminatory

reason was more likely than not a motivating or determinative cause" of AIM's adverse employment action, *Burton v. Teleflex, Inc.*, 707 F.3d 417, 427 (3d Cir. 2013), or to "believe discrimination was more likely than not a 'but for' cause of the adverse employment action." *Abels v. DISH Network Serv., LLC*, 507 F. App'x at 183; *see also Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644-45 (3d Cir. 1998) (the plaintiff must "point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision."). Accordingly, the Court finds that Doutt's age discrimination claims under the ADEA and PHRA fail as a matter of law.

Doutt also has claims under both the ADEA and PHRA for retaliation. In the absence of direct evidence of retaliation, retaliation claims under both the ADEA and the PHRA typically proceed under the McDonnell Douglas framework. *See generally Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-568 (3d Cir. 2002). In order to establish a *prima facie* case for retaliation under the ADEA and PHRA, Doutt must establish that (1) he engaged in a protected activity; (2) he was subject to an adverse action; (3) there was a causal connection between the protected activity and the adverse action. *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). There is no dispute that Doutt engaged in a protected activity and that he was subject to an adverse employment action. The parties dispute, however that there was a causal connection between the protected activity and the adverse action.

One means of establishing a causal connection between the protected activity and adverse action is to demonstrate temporal proximity between these events. *See, e.g., Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000). In addition, an employer's continued pattern of antagonism after the employee's protected activity may also establish the requisite causation. *See Gairloch v. Pa. State Univ.*, 84 F. Supp. 3d 407, 417 (M.D. Pa. 2015) (citing *Robinson v. Southeastern*

*Pennsylvania Transp. Auth., Red Arrow Div.*, 982 F.2d 892 (3d Cir. 1993)). Here, Doutt attempts to establish causation by showing a pattern of antagonism after his protected activity.

The Court, however, finds such an analysis in this instance an exercise in futility. Even assuming that Doutt can establish such antagonism, this Court has already found that AIM had a legitimate nondiscriminatory reason for terminating his employment, and that Doutt is unable to show pretext. Accordingly, Doutt's retaliation claim under both the ADEA and PHRA fails as well.

## V. CONCLUSION

The Court finds that there are no material facts in dispute, Doutt is unable to show that that AIM violated his rights under the ADEA or the PHRA. Accordingly, AIM's motion for summary judgment shall be granted. An appropriate order will follow.

s/ DAVID STEWART CERCONE  
David Stewart Cercone  
United States District Judge

cc: Neal A. Sanders, Esquire  
Marla N. Presley, Esquire  
Kathleen M. Tinnerello, Esquire  
Mariah H. McGrogan, Esquire

(*Via CM/ECF Electronic Mail*)